## Rice, et al. v. Salyers, et al.

(Decided October 17, 1912.)

### Appeal from Johnson Circuit Court.

Deed—Cancellation—Fraud.—In an action to have a deed declared a will and canceled on the ground of fraud, evidence examined and held to sustain the finding of the chancellor in favor of defendants.

E. P. HARRIS, JOHN W. WHEELER and C. B. WHEELER for appellants.

VAUGHAN, HOWES & HOWES for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On January 6, 1905, A. W. Rice and Dicey Rice, his wife, executed and delivered to Add Salyers and Cora Salyers a deed to a small tract of land located in Johnson County, Kentucky. The consideration recited in the deed is as follows:

"That said parties of the first part for and in consideration of the sum of $500 paid as follows: $83 1-3 to be paid Isadore Horn (Tom's son), $83 1-3 to be paid Billie Salyers (Tom's son) and $83 1-3 to be paid Nolia Salyers (Jesse's daughter), $83 1-3 to be paid Tavy Salyers (John's daughter), and $83 1-3 to be paid Andy Blair (Jim's son) and $83 1-3 to paid Rodda Rice (Jake's son); to be paid at our death to all that is twenty-one years of age, and to the balance as soon as they are 21 years old."

The deed also contains the following provision:

"It is further understood that A. W. Rice and wife is to have control of said property during their natural life. Add Salyers and wife is to have said property and at their death their two sons is to have said property, viz.: Ray Salyers and Roy Salyers."

The deed was acknowledged by the grantors before J. M. Price, clerk of the Johnson County Court. On January 14, 1905, the deed was put to record.

On February 7, 1910, A. W. Rice and wife brought this action against Add Salyers, Cora Salyers and their two children, Roy Salyers and Ray Salyers, to have the foregoing deed set aside. It was charged in the petition that it was the intention of the parties that the grantors should execute a will, and that in executing the deed in question they thought they were executing a will; that there was an agreement between plaintiffs and defendants that the writing was not to be recorded until after the deaths of the plaintiffs. It was further charged that the defendants had agreed to take care of plaintiffs, but had failed to do so. By amended petition it was charged that the plaintiffs intended at the time to execute a will, and that the deed in question was obtained from them by fraud. The allegations of the petition and the amended petition were denied by answer. The chancellor entered judgment in favor of the defendants. Plaintiffs appeal.

A. W. Rice testifies that it was his intention to execute a will. He took Add Salyers in his house in order that Add might help him do his outside work, and also help in the store. J. M. Price, County Court Clerk, drew the writing. Witness told Price what he wanted, and Price said he would get it all right; does not think that Price read the deed over to him. Understood that he was simply making a will, which he could revoke at

any time. The understanding was that Add Salyers was not to have the writing recorded until the death of plaintiffs. On the same day witness executed another deed. He laid the deeds down, and when Add Salyers got ready to leave he took the deeds. Witness did not know the deed had been recorded until two or three years later. The land conveyed was worth about $1,000. After the deed was made Add Salyers and his wife moved into plaintiff's house and remained there about three months. Add Salyers was witness' nephew, while Add Salyers' wife was a niece of witness' wife. It developed on cross-examination that witness on the same day sold another tract of land to Add Salyers for $900. On the same occasion, Add Salyers and wife executed a deed to Burns Fitzpatrick. Witness further admitted that he had had numerous transactions, was a man of considerable means, and knew the difference between a deed and a will. He knew how to read, and read the deed in question while on the witness stand. Subsequently witness bought back from Add Salyers for $1,000 the tract of land which he had sold to Add Salyers for $900. The reason he intended to execute a will was that he allowed that he might want to change it. Witness admits that he saw Cora Salyers crying once because Aunt Dicey had complained of the noise that the children made. The only improper conduct that he charges against Add Salyers is that he, on two or three occasions, came home about 10 o'clock at night, and made some noise kicking snow off his feet.

According to the evidence for defendant, A. W. Rice sent word to Add Salyers that he wanted to make a big trade with him. When Add went over to see plaintiff plaintiff told him that he wanted to sell his farm back of Denver for $900; that if Add would buy it, plaintiffs would deed his oldest boy the property where plaintiffs lived, and would require Add to pay $300 to certain nieces and nephews of plaintiff who were pets of theirs. Before the agreement was concluded, Aunt Dicey Rice, plaintiff's wife, mentioned certain other nieces and nephews, and the sum directed to be paid by Add was increased to $500, and it was also agreed that the land should be conveyed to both of Add's children upon his and his wife's death. A. W. Rice suggested that Jim Price write the deed. Price was then sent for and drew the deed in question just as plaintiff directed him to do.

At the same time, he drew a deed for the $900 tract, and a deed from Add and wife to Burns Fitzpatrick. At the same time, it was agreed that Add and his wife could move into plaintiff's house, and plaintiff would make an assignment to him of his stock of goods if Add would assist in running the business. The only reason that Add and his wife left plaintiffs' premises was that the noise of the children was, disagreeable to Mrs. Rice, who told them that they just had to go.

A careful reading of the record convinces us that no fraud of any kind was practiced on A. W. Rice. He admits that he could read, and knew the difference between a deed and a will. He was a successful business man, and was accustomed to making trades and executing deeds. The deed itself shows that it was carefully thought out and carefully prepared. In the first place, plaintiffs reserved in the deed a life estate. In the second place, they conveyed a life estate to Add Salyers and wife, with remainder to their two children. Not only that, but they provided for the payment of $83 1-3 to each of six nieces and nephews. There is not an intimation that plaintiffs were deceived as to the contents of the deed. It is not shown that Add Salyers or his wife said one word to mislead them. Furthermore the evidence is by no means satisfactory that a part of the consideration for the conveyance was that Add Salyers and his wife were to take care of plaintiffs. On the contrary, it is perfectly apparent that plaintiffs, who were fond of Add Salyers and his wife and children, were trying to do something for them. Moreover, the weight of the evidence is to the effect that Add Salyers and wife left plaintiffs' premises because Mrs. Rice desired them to go. Under these circumstances, we see no reason to disturb the finding of the chancellor.

Judgment affirmed.